## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG DIVISION

INTERNATIONAL UNION,
UNITED MINE WORKERS OF
AMERICA and LOCAL UNION
1702, UNITED MINE WORKERS
OF AMERICA

        Plaintiffs,

v.

MONONGALIA COUNTY COAL
COMPANY

        Defendant.

Civil Action  No.  1:14-cv-50 (Keeley)

Electronically filed:  March 21, 2014

## COMPLAINT

Plaintiffs International Union, United Mine Workers of America and Local

1702, United Mine Workers of America (collectively, "UMWA"), by and through

counsel, bring this Action to compel enforcement of the final and binding

arbitration award of Arbitrator Elliot H. Shaller that was rendered under the terms

of the parties' collective bargaining agreement in Case No. 11-31-14-055 on

March 2, 2014. A true and correct copy of Arbitrator Shaller's Decision and Award

is attached hereto as Exhibit A.

## Jurisdiction and Venue

1.　　This Court has subject matter jurisdiction over this action under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and under 28 U.S.C. § 1331.

2.　　Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 185(a).

## Parties

3.　　Plaintiff International Union, United Mine Workers of America ("International Union") is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and maintains its principal office in Triangle, Virginia. The Union's District 31 is an administrative division of Plaintiff, International Union and maintains its office in Fairmont, WV. The International Union represents bargaining unit employees of Defendant Monongalia County Coal Company ("MCCC" or the "Company") for purposes of collective bargaining and other labor matters.

4.　　Plaintiff Local Union 1702, United Mine Workers of America ("Local 1702" or the "Local") is an unincorporated association and labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5), that maintains its office in Morgantown, West Virginia. Local 1702 represents

2

bargaining unit workers of MCCC at the Company's Monongalia County Mine, located in Brave, Pennsylvania, for purposes of collective bargaining and grievance processing and arbitration.

5.      Defendant MCCC operates the Monongalia County Mine, an underground bituminous coal mine located near Brave, Pennsylvania. MCCC is incorporated under the laws of the State of West Virginia and is an employer engaged in interstate commerce or in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the National Labor Relations Act, 29 U.S.C. §§ 152(2), (6)-(7).

## Facts

6.      MCCC and the UMWA are parties to a collective bargaining agreement, the 2011 National Bituminous Coal Wage Agreement ("2011 NBCWA" or the "Agreement"), which governs, *inter alia*, the wages, hours, and working conditions of bargaining unit employees at the Monongalia County Mine. A copy of the portions of the Agreement that are relevant to this matter is attached hereto as Exhibit B.

7.      Article XXIII of the 2011 NBCWA provides for final and binding resolution of disputes under the Agreement through a grievance and arbitration process. Article XXIV adopts this arbitration process explicitly for disputes arising out of the discharge of bargaining unit employees. Article XXIII(k) provides that

decisions of the Arbitration Review Board ("ARB") rendered prior to the

expiration of the National Bituminous Coal Wage Agreement of 1978 continue to

have precedential effect under the 2011 NBCWA, "to the extent that the basis (*sic.*)

for such decisions have not been modified by subsequent changes in [the 2011

NBCWA]." Exhibit B, *2011 National Bituminous Coal Wage Agreement*, at Art.

XXIII(k) (hereinafter "Ex. B").

8.     Prior to January 13, 2014, Local 1702 member Joe Kulpa worked for

MCCC at the Monongalia County Mine. Mr. Kulpa had worked for the Company

since 1977, with the exception of two layoff periods in 1979 and 1981. During this

time, he has never been subject to discipline and has never tested positive for drugs

or alcohol. Exhibit A, *Decision and Award of Arbitrator Shaller*, at 7 (hereinafter

"Ex. A").

9.     While working at the Monongalia County Mine on December 30,

2013, Mr. Kulpa underwent a mandatory workplace drug test administered by

MCCC. On January 6, 2014, Mr. Kulpa and the Company received the results of

the test, which indicated a positive result for cannabinoids. *See id.* at 8.

10.     In response, MCCC issued Mr. Kulpa a Notice of Suspension with

Intent to Discharge ("SWID") on January 13, 2014. The SWID charged Mr. Kulpa

with reporting to work under the influence of cannabinoids, in violation of the

Company's Employee Conduct Rules. It further charged him with reporting to

4

work, working, and/or entering the mine after having used cannabinoids and/or while impaired by them, and with testing positive for cannabinoids, in violation of the Company's Rules Concerning Drugs and Alcohol (known as the "2008 Rules"). *See id.* at 10; *see also id.* at 4-7 (excerpting the relevant portions of the Employee Conduct Rules and the 2008 Rules).

11.     The 2008 Rules provide that an employee who violates them will be "subject to disciplinary action up to and including discharge." *Id.* at 6. The Union bargained for this language specifically, after rejecting a "zero tolerance," automatic discharge policy that Consol Energy – the Monongalia County Mine's previous owner – had proposed initially. *See id* at 4-5 (discussing and quoting the proposed "zero tolerance" policy).

12.     On January 16, 2014, Mr. Kulpa filed a grievance against MCCC, arguing that the Company violated Articles III, XXIII, XXIV, and XXVI of the 2011 NBCWA – along with the 2008 Rules and the Employee Conduct Rules – by issuing him the SWID. The grievance sought reinstatement and make-whole relief. *See id.* at 14.

13.     After submitting his grievance to MCCC, Mr. Kulpa admitted to Union representatives that he smoked marijuana while on vacation during the first week of December 2013. UMWA District 31 International Field Representative Dennis Adam Frye related this information to the Company. *See id.* The Company

presented no evidence that Mr. Kulpa worked while impaired as a result of marijuana ingestion on December 30, 2013 – the day of his drug test – or on any other day.

14.     MCCC denied the grievance, which was then referred to arbitration pursuant to Articles XXIII-XXIV of the 2011 NBCWA. *See* Ex. B at Art. XXIII-XXIV. The Company and Local 1702 participated in an arbitration hearing on February 7, 2014, during which each party had the opportunity to present evidence, submit closing arguments, supplement the arguments with oral comments, and present past arbitration awards for Arbitrator Shaller's consideration. Arbitrator Shaller issued his Decision and Award on March 2, 2014. *See* Ex. A at 2, 30.

15.     Arbitrator Shaller found that MCCC had not proven that it had just cause to discharge Mr. Kulpa, as required by Article XXIV of the 2011 NBCWA. *See id.* at 20; *see also* Ex. B at Art. XXIV. Specifically, Arbitrator Shaller determined that the Company did not show that Mr. Kulpa had committed one of the three violations with which it charged him: reporting to work under the influence of cannabinoids, in violation of the Employee Conduct Rules. *See* Ex. A at 22-23. Further, Arbitrator Shaller concluded that MCCC did not demonstrate that discharge was the appropriate discipline for Mr. Kulpa "under all of the facts and circumstances." *Id.* at 23.

16.    Arbitrator Shaller found that MCCC failed to consider the mitigating circumstances of Mr. Kulpa's case, as the 2008 Rules require. These circumstances include Mr. Kulpa's length of service, his clean employment record, the lack of any evidence that he has ever reported to work while impaired by drugs, and the lack of any concern regarding his attendance and compliance with applicable mine safety rules. *See id.* at 23-28.

17.    Arbitrator Shaller determined that MCCC had proven only its right to discipline Mr. Kulpa in response to his positive drug test, not its right to discharge him. Arbitrator Shaller, therefore, reduced his discipline to a sixty-day unpaid suspension, beginning retroactively on his last day of work. Arbitrator Shaller ordered MCCC to reinstate Mr. Kulpa at the conclusion of his suspension, provided that his miner's certificate has not been suspended or revoked. If this is the case, however, the Company is required to reinstate him if and when his certificate is reactivated. *See id.* at 29.

18.    Arbitrator Shaller's Decision and Award of March 2, 2014 is final and binding pursuant to the express terms of the 2011 NBCWA. *See* Ex. B at Art. XXIII-XXIV.

19.    Arbitrator Shaller's Decision and Award draws its essence from the interpretation and application of the parties' collective bargaining agreement, the 2011 NBCWA. *See id.* at Art. XXIV.

20.     The decision is based on Arbitrator Shaller's understanding and application of ARB decisions, which the parties – in the 2011 NBCWA – adopted explicitly as governing precedent in the arbitration of their grievances. *See id.*

21.     At no time has MCCC made an allegation of arbitrator bias or asserted that it experienced a denial of due process with respect to the manner in which Arbitrator Shaller conducted the hearing in this matter.

22.     Notwithstanding Arbitrator Shaller's clear and unambiguous Decision and Award, MCCC has refused to abide by the decision by failing to reinstate Mr. Kulpa and by stating its intention not to do so. Union efforts to persuade MCCC to reconsider this position have been fruitless. The Company, therefore, stands in violation of the terms of its collective bargaining agreement with the UMWA.

**WHEREFORE,** the Plaintiffs request respectfully that this Court:

23.     Enter judgment and relief in their favor and against MCCC by declaring that Arbitrator Shaller's March 2, 2014 Decision and Award is final and enforceable;

24.     Order specific enforcement of the Decision and Award, including reinstatement of Mr. Kulpa, with full make-whole relief and both pre- and post-judgment interest;

25.     Award Local 1702 and the International Union their costs and reasonable attorneys' fees incurred in this matter; and

26.     Award such other relief as the Court deems just and proper.


                                        Respectfully Submitted,


                                        Charles F. Donnelly WV B#1039
                                        United Mine Workers of America
                                        1300 Kanawha Boulevard East
                                        Charleston, WV 25301
                                        (304) 346-0341
                                        (304) 346-1186 (fax)
                                        cdonnelly@umwa.org